# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **SHENZHEN DONGHONGZE TRADING CO., LTD.;** **SHENZHENSHIPENGLINGZHICHUANGK EJIYOUXIANGONGSI;** **SHEN ZHEN SHI JIA CAI LI KE JI YOU XIAN GONG SI;** **SHENZHENSHIWEIDONGZHIXINKEJIYO UXIANGONGSI;** **SHENZHENSHILAIBOKEJIYOUXIANGON GSI;** **SHEN ZHEN SHI TAI SEN AO KE JI YOU XIAN GONG SI;** **SHENZHENSHIMAOHONGSHENGKEJIYO UXIANGONGSI;** **DONGGUANSHIGUANGLIYINGDIANZIKE JIYOUXIANGONGSI;** **ZHAOTONGQIANHENGSHANGMAOYOU XIANGONGSI;** **TRIPLE A INTERNATIONAL TRADING INC;** **RONGBANG ENTERPRISE USA INC; R&T BROTHERS LLC,** | **Civil Action No.: 1:25-cv-796-RP** **Honorable Judge Robert Pitman** **Magistrate Judge Mark Lane** **JURY DEMANDED** |
|           **Plaintiffs,** | |
|     **v.** | |
| **XEBEC, INC.** | |
|           **Defendant.** | |

## DEFENDANT XEBEC, INC.'S MOTION FOR LEAVE TO FILE
## SECOND AMENDED ANSWER, COUNTERCLAIMS AND THIRD PARTY COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY AND MEET AND CONFER EFFORTS........................ 2

FACTUAL BACKGROUND .............................................................................. 3

    **A.**    Xebec Stumbles Upon *Li v. Jiang*, Case No. CVISB2420712 in California Superior Court (the "LI LAWSUIT") ................................................................ 4

    **B.**    The Limited Documents and Responses Plaintiffs Provided in Discovery Are Entirely Contradicted by the Affidavits, Verifications, Declarations, and Evidence in the LI LAWSUIT's Public Filings. .................................... 6

    **C.**    Plaintiffs' Discovery Abuses Extend to Non-Triple A Entities........................... 12

    **D.**    Plaintiffs Have an Unusual Relationship with the SHENZHEN BAIJIAYOUPU TECHNOLOGY CO. LTD. ................................................................... 15

STANDARD OF REVIEW ................................................................................ 16

ARGUMENT AND AUTHORITIES ................................................................ 17

PRAYER FOR RELIEF ................................................................................... 19

*Motion for Leave to File Second Amended Answer and Counterclaims*          *Cause No.: 1:25-CV-796*

## FIFTH CIRCUIT COURT OF APPEALS

*Davis v. United States,* 961 F.2d 53 (5th Cir. 1991)..................................................... 17

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981)...............................17, 18

*FMC Finance Corp. v. Murphree,* 632 F.2d 413 (5th Cir. 1980)................................... 20

*Garcia v. Unit Drilling Co.,* 396 F. App'x. 133 (5th Cir. 2010)..................................... 16

*Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001).............................................................. 17

*Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282 (5th Cir. 2002)............................ 17

*Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420 (5th Cir. 2004)............... 18

*Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494(5th Cir. 1998)................................. 17

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ......................................... 17

*Smith v. EMC Corp.*, 393 F.3d 590 (5th Cir. 2004)..................................................... 17

## OTHER COURTS OF APPEAL

*Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544 (Fed. Cir. 1990)......................... 21

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986) ........................ 20

*Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478 (Fed. Cir. 1985) ............................... 20

## STATUTES

35 U.S.C. § 271(b)..................................................................................................... 20

## RULES

Fed. R. Civ. P. 15...................................................................................................... 16

Defendant/Counter-Plaintiff XEBEC, Inc. ("XEBEC") files this OPPOSED MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT, attached hereto as **Exhibit 24**, and, if allowed, would show as follows:

## INTRODUCTION

On or about October 4, 2024, XEBEC substituted counsel. After appearing in the case in the Northern District of Illinois, it became clear from the correspondence between XEBEC's prior counsel and counsel for all of the Plaintiff/Counter-Defendants, that substantial discovery served by prior counsel remained unanswered, unproduced, or abusively evaded.

As a result of XEBEC's struggle to receive meaningful and non-evasive responses to its discovery requests, the undersigned law firm conducted an investigation of the Plaintiffs independent of their abusive responses. As a result of this investigation, XEBEC learned that three of the Plaintiffs are involved in their own litigation in the California Superior Court. Upon XEBEC's review of declarations and pleadings filed in California Superior Court filed by Plaintiffs TRIPLE A INTERNATIONAL TRADING INC. (hereinafter "TRIPLE A"), RONGBANG ENTERPRISE USA INC (hereinafter "RONGBANG"), and R&T BROTHERS LLC (hereinafter "R&T BROTHERS"), XEBEC learned more about the nature and extent of these Plaintiffs' infringement than it had in over a year of discovery practice.

XEBEC details these findings in this Motion, as they demonstrate that Plaintiffs have, at best, misrepresented and purposefully withheld facts in discovery. At worst, some group of Plaintiffs are prosecuting this action without the knowledge of one or more owners involved in the California litigation.

XEBEC respectfully requests this Court (1) GRANT its Motion; (2) allow XEBEC to file its Second Amended Answer, Counterclaims, and Third-Party Petition; (3) allow XEBEC to join the previously undisclosed affiliate entities and their controlling principals identified in the

*Motion for Leave to File Second Amended Answer,*    *Cause No.: 1:25-CV-796*
*Counterclaims, and Third-Party Petition*

California litigation; and (4) allow XEBEC to join the manufacturer, non-party Shenzhen Baijiayoupu Technology Co. Ltd.

## PROCEDURAL HISTORY
## AND MEET AND CONFER EFFORTS

On October 15, 2023, Plaintiffs filed a complaint for declaratory judgment of non-infringement of U.S. Patent No. 9,395,757 ("'757 Patent"). On November 5, 2023, before Defendant's response, Plaintiffs filed an amended complaint adding a claim for declaratory judgment of invalidity of the '757 Patent. On January 22, 2024, XEBEC answered, asserting counterclaims for infringement of U.S. Patent Nos. 7,762,762 ("'762 Patent") and the '757 Patent. Plaintiffs answered the counterclaims on February 26, 2024.

On July 9, 2024, XEBEC served discovery requests by email, which Plaintiffs' counsel overlooked while out of office. On August 9, 2024, XEBEC notified Plaintiffs their responses were overdue (due August 8, 2024). Plaintiffs moved for leave to serve late responses on August 13, 2024; the Court granted the motion on August 16, 2024, extending the deadline to August 29, 2024. On August 20, 2024, Plaintiffs filed a Second Amended Complaint, adding a claim of invalidity for the '762 Patent and expanding non-infringement contentions to all claims of both patents. Plaintiffs served discovery responses on August 29, 2024.

On September 3, 2024, XEBEC filed an amended answer and counterclaims. On October 1, 2024, its counsel withdrew; and the undersigned counsel appeared on October 4, 2024. The parties met and conferred on October 24, 2024, regarding alleged deficiencies in Plaintiffs' discovery responses,[1] followed by a deficiency letter from XEBEC on October 25, 2024. XEBEC obtained a DCO extension on October 31, 2024. Additional meet-and-confers occurred on

---

[1] *See* Exhibit 18.

*Motion for Leave to File Second Amended Answer,*          *Cause No.: 1:25-CV-796*
                                        *Counterclaims, and Third-Party Petition*

November 4[2] and November 15, 2024; Plaintiffs nominally supplemented their responses on November 26, 2024.

On February 7, 2025, Plaintiffs and XEBEC met to discuss deposition topics previously noticed by Plaintiffs. During this meeting, XEBEC informed Plaintiffs of its intent to file a motion for leave to amend its answer and counterclaims based on newly discovered information related to the "LI LAWSUIT" (addressed in detail below). The parties agreed to schedule a follow-on conference after Plaintiffs had an opportunity to review XEBEC's proposed amended answer and counterclaims and the materials from the "LI LAWSUIT."

On February 11, 2025, XEBEC provided a draft of its amended counterclaims; on February 12, 2025, Plaintiffs opposed the amendment. On February 21, 2025, Plaintiffs moved to extend fact discovery by 60 days.[3] On February 25, 2025, XEBEC filed its motion for leave to amend[4]; that same day, the Northern District of Illinois dismissed all pending motions without prejudice and requested a joint statement on venue. On March 7, 2025, the parties filed the joint statement, with XEBEC seeking leave to move to transfer venue. On May 23, 2025, Judge Blakey ordered a transfer to the Western District of Texas.

## FACTUAL BACKGROUND

In the present case, newly discovered information concerning some of the parties ("identified parties") to this case make it clear that, unless Plaintiffs are restrained, XEBEC would not be able to collect any judgment if successful on the merits. In particular, XEBEC can now demonstrate that (1) that the identified parties are actually related fictitious entities formed and coordinated to evade liability and (2) that the identified parties use sham ownership to obscure

---

[2] *See* Exhibits 19 and 20.
[3] Dkt. 79.
[4] Dkt. 81.

their true identities and relationships. XEBEC can further demonstrate that the parties not identified in the newly discovered information ("non-identified parties") have nearly identical characteristics and that it is also unlikely that XEBEC would be able to collect any judgment against any of the Plaintiffs.

### A.    XEBEC's Investigation Unearths the "LI LAWSUIT," *Li v. Jiang*, Case No. CVISB2420712 in California Superior Court.

On or about January 27, 2025, while independently seeking documents and information about Plaintiffs that had previously been withheld in discovery, XEBEC's counsel identified information associating an individual unknown to this lawsuit and unidentified in discovery, CUIWEN JIANG, with Plaintiff TRIPLE A. Upon further investigation, the counsel identified a lawsuit filed by TOM LI, founder and shareholder of TRIPLE A, against CUIWEN JIANG, putative shareholder of RONGBANG, in California Superior Court located in San Bernardino (the "LI LAWSUIT").[5] The publicly available documents filed in the LI LAWSUIT describe TRIPLE A's operations as including Plaintiffs/Counter-Defendants RONGBANG and R&T BROTHERS and proposed Counter-Defendants FUCANG ENTERPRISES USA INC. (hereinafter "FUCANG"), FUBANG GROUP USA INC. (hereinafter "FUBANG"), and SHENZHEN FUCANG INTERNATIONAL SUPPLY CHAIN (hereinafter "SHENZHEN FUCANG").[6]

The declarations and pleadings in the LI LAWSUIT state that TRIPLE A is actually the center of a web of entities—all of which are engaged in directly infringing XEBEC's patents.[7]

First, TRIPLE A is affiliated with the R&T BROTHERS, RONGBANG, and FUCANG entities.[8] The present lawsuit was filed on behalf of twelve (12) plaintiffs, including R&T

---

[5] Exhibit 1.
[6] Exhibit 2 at p. 3.
[7] *Id*.
[8] *Id*.

*Motion for Leave to File Second Amended Answer, Counterclaims, and Third-Party Petition*    *Cause No.: 1:25-CV-796*

BROTHERS and RONGBANG but not including FUCANG. R&T BROTHERS, RONGBANG, and FUCANG, as well as TRIPLE A, each have an Amazon.com store through which infringing auxiliary screen mounting systems are sold.[9] However, at least R&T BROTHERS, RONGBANG, and FUCANG operate as pass-through entities that transfer funds disbursed by Amazon.com to other TRIPLE A-controlled entities, and do not retain any profit or disburse profit to their record owners.[10]

Second, TRIPLE A is also affiliated with FUBANG and SHENZHEN FUCANG.[11] FUBANG is a California-based TRIPLE A-controlled entity that sends funds for the purchase of infringing auxiliary screen mounting systems to SHENZHEN FUCANG.[12] SHENZHEN FUCANG is a China-based TRIPLE A-controlled entity that receives the funds, purchases the infringing auxiliary screen mounting systems, and then transfers them to FUBANG or other TRIPLE A-controlled entities.[13]

The declarations and pleadings in the LI LAWSUIT explain the TRIPLE A operation in detail. They also include a helpful organizational chart, filed on behalf of TOM LI, part owner of TRIPLE A, reproduced for convenience below:[14]

---

[9] *See* Exhibit 3 at p. 9 (stating that this allows the parties to bypass Amazon.com's rule that an entity can only operate a single Amazon.com storefront).

[10] Exhibit 1 at p. 2 (describing RONGBANG as a "mere shell and sham without capital"); Exhibit 2 at p. 3 (stating that FUCANG and R&T BROTHERS "do not have any employee or payroll expense, and have not issued any salary, wages or dividend to any of the record owners").

[11] Exhibit 2. at p. 3.

[12] Exhibit 4 at p. 3; *see also* Exhibit 3 at pp. 12, 14, 17, and 19 (attaching bank statements detailing wire transfers from FUBANG's bank accounts to SHENZHEN FUCANG).

[13] *See* Exhibit 6 at p. 6 (Letter of Authorization to establish SHENZHEN FUCANG in China); *see also* Exhibit 2 at p. 3 (describing SHENZHEN FUCANG as the "procurement entity" and FUBANG as the "importer entity").

[14] Exhibit 2 at p. 3.

*Motion for Leave to File Second Amended Answer,*        *Cause No.: 1:25-CV-796*
*Counterclaims, and Third-Party Petition*

## A.  The Relationship Between the Company and Its Affiliates.

From 2021 to the present, the Company has had a total of four Amazon Seller Accounts/Amazon Storefronts registered under: (1) the Company; (2) Fucang; (3) R & T Brothers; and (4) Rongbang USA. Fubang USA is the importer entity while Shenzhen Fucang is the procurement entity which holds export license(from China to the U.S.) in China.  The relationship between the Company and its affiliates is as follows:



Similar to Fubang's role as an intermediary entity for importing from China, Fucang and R&T Brother both function as "pass-through" entities to sell goods on Amazon. All income derived from their Amazon sales are exclusively used to purchase goods for the Company.

## B.  The Limited Documents and Responses Plaintiffs Provided in Discovery Are Entirely Contradicted by the Affidavits, Verifications, Declarations, and Evidence in the LI LAWSUIT's Public Filings.

The following are just a few examples of the several ways Plaintiffs took affirmative steps to obscure these relationships from XEBEC. On or about July 9, 2024, XEBEC propounded the following Interrogatory on TRIPLE A, RONGBANG, and R&T BROTHERS:[15]

Identify  each  of  Your  officers,  owners,  shareholders,  parents,

---

[15] *See* Exhibit 8 at pp. 6, 17, and 28 and Exhibit 9 at pp. 6-7, 17-18, and 28-29.

subsidiaries, predecessors, and/or affiliated companies including but not limited to, the name, address, title, and duties (where applicable) of each officer, owner, shareholder, parent, subsidiary, predecessor, and affiliated company.

In their original responses, TRIPLE A, RONGBANG, and R&T BROTHERS identify no affiliated companies—not even each other.[16] Rather, in supplemental responses, each Plaintiff states, "Plaintiff does not have any parents, subsidiaries, predecessors, and/or affiliated companies."[17]

Further, Plaintiffs and/or their agents are on record strongly implying that the record owners are owners in name only. For example, in the same LI LAWSUIT filing that included the entity relationship diagram reproduced above, TOM LI states, "[f]rom 2021 to the present, Fubang, Fucang and R&T Brother [sic] do not have any employee or payroll expense, and have not issued any salary, wages or dividend to any of the record owners."[18] In the same filing, TOM LI continues:[19]

> [TRIPLE A]'s procurement arm, Shenzhen Fucang is formed and operated by [TRIPLE A]'s employee, Mr. Qiao under a Letter of Authorization. … Under the Letter of Authorization, Mr. Qiao was authorized by [TRIPLE A] to "oversee the day-to-day administrative matters, operation, business transactions, personnel affairs and finances of" Shenzhen Fucang.

> As Mr. Qiao testified at deposition, Shenzhen Fucang was not formed for profit and does not generate profit. This entity only sold to [TRIPLE A] and does not mark up any product sold to [TRIPLE A] unless for tax return purposes. Mr. Qiao does not draw salary from Shenzhen Fucang.[20]

---

[16] *See* Exhibit 8 at pp. 6, 17, and 28 (responses to Interrogatory #1 by R&T BROTHERS, RONGBANG, and TRIPLE A, respectively).

17 See Exhibit 9 at pp. 6-7, 17-18, and 28-29 (supplemental responses to Interrogatory #1 by TRIPLE A, RONGBANG, and R&T BROTHERS, respectively)

[18] Exhibit 2 at p. 3.

[19] *Id*. at p 4.

[20] *Id*.

*Motion for Leave to File Second Amended Answer,*          *Cause No.: 1:25-CV-796*
                                 *Counterclaims, and Third-Party Petition*

(internal citations omitted.)

Upon information and belief, and based on the documents available to XEBEC from the LI LAWSUIT, the record owners for the relevant entities are:

- FUCANG – XIANBIN LI (Brother of TOM LI)[21]
- FUBANG – JUAN WANG (Spouse of TOM LI)[22]
- SHENZHEN FUCANG – LIANG QIAO[23]

Further, on or about July 9, 2024, XEBEC served the following interrogatory on TRIPLE A, RONGBANG, and R&T BROTHERS:

> Identify each shipment to the United States since 2016 that contained any of the auxiliary screen mounting devices identified in response to Interrogatory No. 19. To be fully responsive, your answer should include without limitation the identities of the shipper and the recipient, the number of each type of auxiliary screen mounting device in each shipment, the declared price for each auxiliary screen mounting device in each shipment, and the dates the auxiliary screen mounting devices were shipped to and received in the United States.[24]

On or about August 29, 2024, each of the three Plaintiffs served identical responses:

> Subject to and without waiving the foregoing objections, Plaintiff answers as follows: **Plaintiff retained a service provider, Shenzhen Meitong Supply Chain Co., Ltd., to deal with the shipment. Plaintiff does not have any other responsive information.** Plaintiff's answer is subject to further investigation and Plaintiff reserves the right to rely on facts, documents, testimony, or other evidence that may develop or come to its attention through the ordinary course of discovery in this case.[25]

(Emphasis added.) These responses were verified under penalty of perjury.[26]

---

[21] Exhibit 3 at p. 4.
[22] *Id*.
[23] Exhibit 2 at p. 4.
[24] *See* Exhibit 8 at pp. 9, 22, and 35 (Interrogatory #22).
[25] *See* Exhibit 8 at pp. 9-10, 22-23, and 35-36 (responses to Interrogatory #22 by R&T BROTHERS, RONGBANG, and TRIPLE A, respectively).
[26] *Id*. at pp. 13, 26, and 39.

Further, each of R&T BROTHERS, RONGBANG, and TRIPLE A served identical supplemental responses on XEBEC on or about November 26, 2024:

> Subject to and without waiving the foregoing objections, Plaintiff answers as follows: **Plaintiff does not have any other responsive information to this Interrogatory after conducting a reasonable search.** Plaintiff's answer is subject to further investigation and Plaintiff reserves the right to rely on facts, documents, testimony, or other evidence that may develop or come to its attention through the ordinary course of discovery in this case.[27]

(Emphasis added.)

However, a declaration filed by TOM LI in the LI LAWSUIT on July 11, 2024, **a month and a half before the original, verified response to the interrogatory**, states that, "Shenzhen Fucang is [TRIPLE A's] exporter holding an export license in China."[28] Further, a declaration filed by CHRIS YIZE LI in the LI LAWSUIT on October 11, 2024, **a month and a half before the supplemental response to the interrogatory**, states the following:

> Fubang Group USA ("Fubang") was set up as an intermediary entity to purchase and receive imported goods from China (i.e., screen splitters). Fubang was formed in late 2021 to protect Triple A, the real estate holding company from potential risks associated with imports, such as tariffs, fines and seizures by the U.S. Customs. The idea to set up an intermediary entity was proposed by Mr. Jiang and executed by myself.[29]

Thus, even if there are technical reasons why SHENZHEN FUCANG does not qualify as a "shipper," CHRIS YIZE LI's declaration specifically identifies FUBANG as the recipient of the shipments of infringing articles. CHRIS YIZE LI's declaration further includes tables identifying shipments by product, including the month, year, and quantity.[30] The following table, incorporated

---

[27] *See* Exhibit 9 at pp. 8-9, 25-26, and 30-31 (supplemental responses to Interrogatory #22 by R&T BROTHERS, RONGBANG, and TRIPLE A, respectively).
[28] Exhibit 5 at p. 4.
[29] Exhibit 4 at p. 3.
[30] *Id*. at p. 25-43.

into CHRIS YIZE LI's declaration, identifies inbound shipments received at the TRIPLE A warehouse on behalf of RONGBANG in 2022:[31]

Rongbang 2022 Montclair Shipment

| Inbound Order No. | Product Code | Received Quantity | Inbound Month/Year |
|---|---|---|---|
| RVA777-220303-0002 | P2 | 160 | Mar-22 |
| RVA777-220412-0001 | P1 | 200 | May-22 |
| RVA777-220418-0001 | P2 | 160 | May-22 |
| RVA777-220426-0001 | P1plus | 200 | Jun-22 |
| RVA777-220701-0001 | P2S | 150 | Aug-22 |
| RVA777-221026-0002 | P1plus | 200 | Nov-22 |
| RVA777-221101-0001 | P2 | 144 | Dec-22 |
| RVA777-221101-0001 | P1plus | 96 | Dec-22 |
| RVA777-221101-0001 | P2pro | 120 | Dec-22 |
| RVA777-230109-0003 | P2S-M | 66 | Apr-23 |
| Total | | 1496 | |

Plaintiffs did not simply overlook this information in their responses. Instead, they affirmatively stated that they do not have any other responsive information after conducting a reasonable search.

In addition to the misrepresentations described above, Plaintiffs made affirmative misrepresentations to the Court in the Northern District of Illinois. Local Rule 3.2 of The United States District Court for Northern District of Illinois (LR 3.2) requires all nongovernmental parties to identify all of the party's affiliates known to the party after a diligent review.[32] "Affiliate" is defined as "any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party."[33] In Plaintiffs' Notice of Affiliates, filed with the previous Court on February 11, 2024, Plaintiffs state, "the following entities and/or individuals, either directly or indirectly, own 5% or more of Plaintiffs" and identify Tom Li as an affiliate of TRIPLE A and R&T BROTHERS and Chris Li as an affiliate of RONGBANG.[34] Based on their representations in their unrelated litigation in California, these statements are false, incomplete, or

---

[31] *Id*. at p. 31.
[32] L.R. 3.2.
[33] *Id*.
[34] Exhibit 12 at p. 2.

*Motion for Leave to File Second Amended Answer, Counterclaims, and Third-Party Petition*    *Cause No.: 1:25-CV-796*

both.

First, the LI LAWSUIT is a dispute about whether CUIWEN JIANG owns 50% of TRIPLE A (as alleged by TOM LI) or 51% of TRIPLE A (as alleged by CUIWEN JIANG).[35] In this case, Plaintiffs failed to disclose CUIWEN JIANG at all, much less his ownership percentage of TRIPLE A.

Second, R&T BROTHERS is a joint venture between TRIPLE A and RONGBANG in which TRIPLE A holds approximately 31% of the equity and RONGBANG owns approximately 69% of the equity.[36] Thus, CUIWEN JIANG owns at least 15% through his minimum 50% share of TRIPLE A and approximately 69% through his ownership of RONGBANG.[37] Plaintiffs have failed to disclose that CUIWEN JIANG owns any portion of R&T BROTHERS and thus did not meet their obligations under L.R. 3.2.

Third, RONGBANG is wholly owned by CUIWEN JIANG, not Chris Li.[38] Thus, Plaintiffs not only failed to disclose the correct owner of RONGBANG but affirmatively misrepresented that CHRIS LI was the owner of RONGBANG.

There are plenty of valid, non-nefarious reasons to split business operations up among individual entities. However, in this case, these entities (1) have sham owners, (2) are passthrough entities that are undercapitalized, and (3) transfer the proceeds from selling infringing auxiliary screen mounting systems to an entity that is beyond this court's jurisdiction. On top of that, Plaintiffs have not only failed to fully respond to XEBEC's discovery requests but have gone so far as to make affirmative misrepresentations that conceal the true nature of Plaintiffs' operations. As such, the only reasonable conclusion is that Plaintiffs are explicitly engaged in a concerted

---

[35] *See* Exhibit 1 at p. 5 and pp. 7-8.
[36] Exhibit 7 at pp. 22-24.
[37] *See* Exhibit 3 at p. 12 (declaration by CUIWEN JIANG).
[38] *Id*.

effort to prevent XEBEC and other parties from recovering judgments against the Plaintiffs.

**C.    Plaintiffs' Discovery Abuses Extend to Non-Triple A Entities**

XEBEC has limited information about the other Plaintiffs, DONGHONGZE, LAIBO, GUANGLIYING, JIA CAI LI, MAOHONG, PENGLING, TAI SEN AO, WEIDONG, and QIANHENG because the remaining Plaintiffs have been similarly evasive in their discovery responses. However, the foregoing Plaintiffs share many characteristics with the TRIPLE A entities that suggest they operate in a similar manner.

First, each of the non-TRIPLE A entities have refused to identify their officers, owners, or shareholders beyond those identified in the Notice of Affiliates.[39] In the case of the TRIPLE A entities, the owners identified in the Notice of Affiliates were either incomplete or misrepresented.

Second, like the TRIPLE A entities, the non-TRIPLE A entities have affirmatively stated that they do not have any parents, subsidiaries, predecessors, and/or affiliated companies.[40] This statement was an affirmative misrepresentation on the part of the TRIPLE A entities.

Third, each of the TRIPLE A entities served responses to XEBEC's interrogatories requesting identification of shipments into the United States that are identical to the responses from the non-TRIPLE A entities. In particular, each of the non-TRIPLE A entities have identified SHENZHEN MEITONG as the third-party handling the shipping of infringing auxiliary screen mounts and have affirmatively stated that they do not have any additional responsive information.[41] For the TRIPLE A entities, these same responses failed to identify at least two relevant entities involved in shipping and affirmatively misrepresented what information they had

---

[39] *See* Exhibit 9 at pp. 39-40, 50-51, 61-62, 72-73, 85-86, 97-98, 108-109, 120-121, and 131-132 (original and supplemental responses to Interrogatory #1).
[40] *See* id. (supplemental responses to Interrogatory #1).
[41] *See* Exhibit 9 at pp. 41-42, 52-53, 63-64, 76-77, 89-90, 99-100, 111-112, 122-123, and 133-134 (original and supplemental responses to Interrogatory #22).

available to them.

Fourth, at least three entities appear to have been managed by the same individual at the same location. In particular, the initial disclosures for LAIBO, TAI SEN AO, and MAOHONG all identified Ying Gao as the store manager and indicated that the parties were located at the same address.[42] In addition, each of these three entities sell products under the same Amazon.com ASIN.[43]

Similarly, it appears that, despite providing different addresses in their initial disclosures, WEIDONG and PENGLING have operated from different rooms in the exact same building. Specifically, WEIDONG and PENGLING's purported addresses, as included in the initial disclosures, are different.[44] However, according to the assignment for United States trademark "WESTHOD", registration number 6445374, WEIDONG is/was located in the same building as PENGLING.[45]

Fifth, the declarations submitted in support of Plaintiffs Original Complaint and First Amended Complaint include numerous discrepancies between filings by individual entities and similarities among different entities. Plaintiff RONGBANG filed a declaration in support of the Original Complaint signed by someone named "STEVE." Then, RONGBANG filed a declaration in support of the First Amended Complaint by someone named "WANG LONGXIN" with a clearly different signature.[46] Similarly, Plaintiff MAOHONG filed declarations in support of the Original Complaint and the First Amended Complaint signed by Xiaoli Hu, but the declarations

---

[42] Exhibit 13 at pp. 4-5.

[43] *See* Exhibit 9 at pp. 74-75, 87-88, 110 (original and supplemental responses to Interrogatory No. 19).

[44] Exhibit 13 at pp. 3-4.

[45] Exhibit 15 at p. 15.

[46] *See* Exhibit 10 at p. 21 (signature page for RONGBANG declaration in support of Plaintiffs' Original Complaint); *compare to* Exhibit 11 at p. 21 (signature for RONGBANG declaration in support of Plaintiffs' 1st Amended Complaint).

have different signatures, different date formats (including one written by hand and one typed), and with the given name and family name flipped.[47] In addition, despite the assertions that the parties are unrelated, the declarations filed in support of the Original Complaint for GUANGLIYING, LAIBO, MAOHONG, TAI SEN AO, and ZHAOTONG all appear to have been printed out, signed, and then digitized by taking a picture of the declarations *in the exact same location*.[48] While this is clearly visible based on the similar lighting, the underlying surface on which the declarations were placed on is visible along the edges of each of the sheets of paper and appear to be *identical*.

Other inconsistencies abound. Song Jianfeng signed both the declaration submitted in support of the Original and First Amended Complaints on behalf of JIA CAI LI as well as the verification for the original responses to XEBEC's discovery requests; in the first instance the signature is signed in capital block letters whereas the second is in a more normal script with the family name and given names flipped.[49] The same issue crops up with Plaintiffs WEIDONG,[50] DONGHONGZE,[51] and RONGBANG.[52]

The similarities between the TRIPLE A entities and non-TRIPLE A entities are sufficient

---

[47] *See* Exhibit 10 at p. 15 (signature page for MAOHONG declaration in support of Plaintiffs' Original Complaint); *compare to* Exhibit 11 at p. 15 (signature page for MAOHONG declaration in support of Plaintiffs' 1st Amended Complaint).

[48] *See* Exhibit 10 at pp. 4-6, 10-12, 13-15, 22-24, 25-27.

[49] *See* Exhibit 8 at p. 49 (verification of JIA CAI LI original responses to XEBEC's discovery); *compare to* Exhibit 10 at p. 9 (signature page for JIA CAI LI declaration in support of Plaintiffs' Original Complaint).

[50] *See* Exhibit 8 at p. 59 (verification of WEIDONG original responses to XEBEC's discovery); *compare to* Exhibit 10 at p. 30 (signature page for WEIDONG declaration in support of Plaintiffs' Original Complaint).

[51] *See* Exhibit 8 at p. 69 (verification of DONGHONGZE original responses to XEBEC's discovery); *compare to* Exhibit 10 at p. 3 (signature page for DONGHONGZE declaration in support of Plaintiffs' Original Complaint).

[52] *See* Exhibit 8 at p. 26 (verification of RONGBANG original responses to XEBEC's discovery); *compare to* Exhibit 11 at p. 21 (signature page for RONGBANG declaration in support of Plaintiff's 1st Amended Complaint).

to suggest that they operate in a manner similar to the TRIPLE A entities.

**D.      Plaintiffs Have an Unusual Relationship with the SHENZHEN BAIJIAYOUPU TECHNOLOGY CO. LTD.**

SHENZHEN BAIJIAYOUPU TECHNOLOGY CO. LTD. ("BAIJIAYOUPU") has been identified by each and every party in this case as the manufacturer of the infringing products.[53] Upon information and belief, BAIJIAYOUPU owns all rights and title to the United States trademark for "OFIYAA", registration number 6136387.[54]

Multiple Plaintiffs have trademarks as well: WEIDONG owns the United States trademark for "WESTHOD"; DONGHONGZE owns the United States trademark for "CIDETTY"; PENGLING owns the United States trademark for "FICIHP"; TRIPLE A owns the United States trademark for "ALECEWAY"; RONGBANG owns the United States trademark for "BQAA"; and R&T BROTHERS owns the United States trademark for "COPGAIN."[55] Further, each of these Plaintiffs use their registered trademarks when marketing their products on Amazon.com.[56]

However, despite owning their own unique trademarks and marketing their own products under their trademarks, the products they actually deliver to customers are identified with the "OFIYAA" trademark, owned by BAIJIAYOUPU.[57]

As another example, a review on Amazon.com on the product page for ASIN B09L4X16B6—purportedly a product page under which TRIPLE A sells infringing products— indicates that the customer originally ordered an OFIYAA P2 Pro that failed after two months.

---

[53] Exhibit 8 at pp. 7-8, 20-21, 33-34, 45-46, 55-56, 65-66, 75-76, 85-86, 95-96, 105-106, 115-116, and 125-126.
[54] *See* Exhibit 14 (OFIYAA Trademark Report).
[55] *See* Exhibit 15 (Trademark Reports for ALECEWEY, BQAA, CIDETTY, COPGAIN, FICIHP, WESTHOD).
[56] *See* Exhibit 16 (Plaintiffs' Amazon Product Pages at p. 1 for Aleceway, p. 2 for BQAA, p. 3 for CIDETTY, p. 4 for CopGain, p. 5 for FICIHP, and p. 6 for WESTHOD).
[57] *See* Exhibit 17 (reviews for Plaintiffs' Products at p.1 for WESTHOD, p.2 for CIDETTY, p.3 for FICIHP, p.4 for Aleceway, p.6 for CopGain, p.7 for BQAA).

When they returned it, the product they received included the trademark "FICIHP" instead of "OFIYAA."[58] The "FICIHP" trademark is, as noted above, owned by PENGLING, not TRIPLE A.

**STANDARD OF REVIEW**

A party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also Garcia v. Unit Drilling Co.,* 396 F. App'x. 133, 136 (5th Cir. 2010) (noting that leave to amend should be granted liberally unless the movant acted in bad faith, granting leave to amend would result in prejudice or amendment is futile). Leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002).

The five factors under the Rule 15 standard for amendment are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)).

Delay alone may not always be a sufficient reason to deny leave, but taken together with other dilatory tactics and disregard for the court's rules, the denial of leave might be justified. *See Lewis v. Fresne*, 252 F.3d 352, 360 (5th Cir. 2001). Decisions concerning motions to amend are "entrusted to the sound discretion of the district court." *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

Although a court's denial of a motion for leave to amend is reviewed under an abuse of

---

[58] Exhibit 17 at p. 5.

*Motion for Leave to File Second Amended Answer,*                *Cause No.: 1:25-CV-796*
                        *Counterclaims, and Third-Party Petition*

discretion standard, "the term 'discretion' in this context may be misleading because Federal Rule of Civil Procedure 15(a) evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). "As a result, absent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.' Stated differently, district courts must entertain a presumption in favor of granting parties leave to amend." *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citations omitted). *See also Dussouy*, 660 F.2d. at 598 ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading. Thus, unless there is a 'substantial reason' to deny leave to amend, the discretion of the district court is not broad enough to permit denial." [citations omitted]).

## ARGUMENT AND AUTHORITIES

XEBEC acknowledges the significance of both the timing and nature of its present request, which was initially filed in the Northern District of Illinois on February 25, 2025, about one and a half years into the litigation in the present suit. This re-filed Motion comes shortly after the entry of a new Docket Control Order by this Court on August 5, 2025, following the case's transfer to the Western District of Texas on May 23, 2025. While discovery remains open until March 31, 2026, substantial discovery efforts have already taken place prior to the transfer, and this request implicates serious factual and legal issues arising from recent developments.

XEBEC's delay in raising this Motion was neither a result of indifference or neglect regarding this case, nor a bad-faith, dilatory motive designed to prejudice the opposing party. Rather, due to the extreme conflict between the discovery responses received in this case and those documents uncovered in the LI LAWSUIT, it appears likely that any or all of the following may

be true: (1) Plaintiffs are sham entities created for the purposes of escaping liability; (2) counsel does not have authority from Plaintiffs' owners to represent them; (3) Plaintiffs have purposefully misled XEBEC in its requests aimed at Plaintiffs' patent infringement; and (4) TOM LI and/or CUIWEN JIANG are unaware the present suit is being prosecuted in the names of companies they control.

Given that the undersigned discovered the LI LAWSUIT four months into the representation of XEBEC, and that the first declarations and pleadings were filed three months before the undersigned appeared, the circumstances warrant the granting of the amendment. The present case was filed by the infringers, who have stalled, evaded, and misrepresented the facts in discovery, long before XEBEC's present counsel was a part of this matter. It has taken months just deal with the facial deficiencies present in the pre-existing discovery requests served when the undersigned joined the case. Uncovering that even the limited discovery previously served was largely inaccurate or misleading, XEBEC is placed in an extremely prejudicial position.

It is Plaintiffs who are engaged in the bad faith, dilatory discovery tactics serving to put an undue burden on XEBEC. The discovery to this point, even that which was conducted before the undersigned appeared, is so contradicted by the pleadings and declarations in the LI LAWSUIT—both sides!—that it appears XEBEC needs to start over.

The purpose of the extensive factual recitation in this memorandum is to demonstrate that such facts do exist and the proposed amendment is well-pled. The relationships between the parties are such that CUIWEN JIANG and TOM LI are specifically engaging the corporate form to both violate Amazon.com's terms and to shield themselves from liability—going so far as to perpetuate the fraud before this Court by declaring owners and "store managers" who have nothing to do with the control over the infringing goods. *See FMC Finance Corp. v. Murphree,* 632 F.2d 413, 422

(5th Cir. 1980) (stating that the Fifth Circuit has found it appropriate to pierce the corporate veil when there is "such unity of interest and ownership that the separate personalities of the corporation and the shareholder no longer exist, and adherence to the fiction of separate corporate existence would under the circumstances sanction a fraud or promote injustice.") Such a unity of interest and injustice is present here: (1) the TRIPLE A parties do not retain or distribute profits and are under-capitalized; (2) the interested persons of all of Plaintiffs are "store managers," rather than corporate owners—indicating a failure to observe formalities; (3) the actual owners are undisclosed specifically to avoid violating Amazon.com's policies; (4) the companies do not hold any shipping or logistics information, they transfer or substantially all of their funds beyond U.S. jurisdiction; and (5) the companies all appear to be fictions covering for the owners and manufacturer.

Moreover, because "corporate officers who actively aid and abet their corporation's infringement may be personally liable for inducing infringement under [35 U.S.C. § 271(b)], regardless of whether the corporation is the alter ego of the corporate officer," XEBEC's claims are sufficiently pled—even in the face of Plaintiffs' efforts—to overcome a dispositive motion. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578-79 (Fed. Cir. 1986) (citing *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir. 1985). Indeed, 35 U.S.C. § 271(b) provides that "whoever actively induces infringement of a patent shall be liable as an infringer." In *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990), the Federal Circuit reaffirmed that corporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement—regardless of whether the circumstances warrant piercing the corporate veil.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant XEBEC, Inc. prays that this Court

GRANT XEBEC's Motion for Leave to File Second Amended Answer and Counterclaims, and Original Third-Party Complaint; and for such other and further relief for which it shows itself justly entitled.

Date: ___August 13, 2025___                          Respectfully submitted,

                                                          By: ___/s/ Blake Stovall___
                                                              Blake D. Stovall
                                                              TX Bar No. 24081165
bstovall@barks.law
Justen S. Barks
TX Bar No. 24087142
Jbarks@barks.law
Daria Adler
TX Bar. No. 24137921
dadler@barks.law
**BARKS PLLC**
P.O. Box 22171
Houston, Texas 77227
(832) 416-1642 (Tel.)

**ATTORNEYS FOR XEBEC, INC.**

*Motion for Leave to File Second Amended Answer,*          *Cause No.: 1:25-CV-796*
                                                                   *Counterclaims, and Third-Party Petition*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, the foregoing MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT was served on all *pro se* parties and counsel in conformity with the Federal Rules of Civil Procedure through the Court's CM/ECF system.

　　　　　　　　　　　　　　　　　 /s/  Blake D. Stovall
　　　　　　　　　　　　　　　　　　　　Blake D. Stovall

## CERTIFICATE OF CONFERENCE

Pursuant to the Local Rules of the United States District Court for the Western District of Texas, the undersigned counsel for Defendant/Counterclaimant XEBEC, Inc. hereby certifies that on or about July 3, 2025, counsel conferred with counsel for Plaintiffs regarding the relief requested in the foregoing Motion for Leave to File Second Amended Answer, Counterclaims, and Original Third-Party Complaint.

Counsel for Plaintiffs indicated that they oppose the relief requested in the Motion.

　　　　　　　　　　　　　　　　　 /s/  Blake D. Stovall
　　　　　　　　　　　　　　　　　　　　Blake D. Stovall

*Motion for Leave to File Second Amended Answer, Counterclaims, and Third-Party Petition*　　　　　*Cause No.: 1:25-CV-796*