**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **SHENZHEN DONGHONGZE** | § | |
| **TRADING CO., LTD.et al.,** | § | |
| | § | |
| **Plaintiff(s),** | § | |
| | § | **25-CV-796-RP** |
| **v.** | § | |
| | § | |
| **XEBEC, INC,** | § | |
| | § | |
| **Defendant(s).** | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER, COUNTERCLAIMS,**
<u>**AND THIRD-PARTY COMPLAINT**</u>

# TABLE OF CONTENTS

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY. ................................. 1

II.  LEGAL STANDARDS. .................................................................................... 2

III.  ARGUMENT ............................................................................................... 3

  A.  Defendant's Motion Should Be Denied for Undue Delay. ........................... 3

    1.  Defendant Should Not be Allowed to Add Shenzhen Baijiayoupu Technology Co. Ltd. As a Third-Party Defendant. ...................................................................... 3

    2.  Defendant Should Not be Allowed to Add the Other Identified Parties. ................... 4

  B.  Defendant's Motion Should Be Denied Because Plaintiffs would be prejudiced by the amendment. ............................................................................................. 5

  C.  Defendant's Motion Should Be Denied for Futility of Amendment. ....................... 7

    1.  Defendant Cannot Establish Personal Jurisdiction Over the Proposed Third-Party Defendants. ............................................................................................ 7

    2.  The Venue is not Proper. ........................................................................... 11

    3.  Defendant's Proposed Pleading Fails to Even State an Infringment Claim Against the Proposed Third-Party Defendants. .............................................................. 13

    4.  Defendant's Proposed Pleading Fails to Include a Viable Claim for a Violation of the Texas Uniform Fraudulent Transfer Act (TUFTA). ....................................... 19

IV.  CONCLUSION ........................................................................................ 20

## TABLE OF AUTHORITIES

**CASES**

*AdvanceMe, Inc. v. Rapidpay LLC*,
450 F. Supp. 2d 669 (E.D. Tex. 2006)...........................................................................................9

*Al-Site Corp. v. VSI Int'l, Inc.*,
174 F.3d 1308 (Fed. Cir. 1999) .................................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................14,16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................13,14,16

*Berry v. D&S Residential Holdings, Inc.*,
2012 WL 1901301 (S.D. Tex. May 24, 2012)...........................................................................20

*BMC Software Belg., N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002) .........................................................................................................7

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................17

*Celgard, LLC v. SK Innovation Co., Ltd.*,
792 F.3d 1373 (Fed. Cir. 2015) ..................................................................................................7

*CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*,
No. 3:15-CV-2854-B, 2016 WL 3418974 (N.D. Tex. June 22, 2016) ...................................11,13

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015).....................................................................................................................16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).......................................................................................................................7

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ......................................................................................................19

*Foman v. Davis,*

371 U.S. 178 (1962) ........................................................................................................2

*Gregory v. Mitchell,*

634 F.2d 199 (5th Cir. 1981) ...........................................................................................3

*Grober v. Mako Products, Inc.,*

686 F.3d 1335 (Fed. Cir. 2012) .......................................................................................9

*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*

909 F.2d 1464 (Fed. Cir. 1990) .....................................................................................16

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*

681 F.3d 1323 (Fed. Cir. 2012) .....................................................................................15

*In re Cray, Inc.,*

871 F.3d 1355 (Fed. Cir. 2017) .....................................................................................13

*In re EMC Corp.,*

677 F.3d 1351 (Fed. Cir. 2012) ......................................................................................9

*In re Google LLC,*

949 F.3d 1338 (Fed. Cir. 2020) .................................................................................12,13

*In re HTC Corp.,*

889 F.3d 1349 (Fed. Cir. 2018) .....................................................................................12

*In re Primera,*

560 B.R. 448 (W.D. Tex. Bankr. 2016) ..........................................................................19

*In re ZTE (USA) Inc.,*

890 F.3d 1008 (Fed. Cir. 2018) .................................................................................12,13

*Jackson v. Tanfoglio Giuseppe S.R.L.,*

615 F.3d 579 (5th Cir. 2010) ...........................................................................................7

*J. McIntyre Mach., Ltd. v. Nicastro,*

564 U.S. 873 (2011) ...................................................................................................10,11

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,

869 F.3d 1372 (Fed. Cir. 2017) ..................................................15

*Overseas Inns S.A. P.A. v. U.S.*,

911 F.2d 1146 (5th Cir. 1990) ..................................................2,4

*Manville Sales Corp. v. Paramount Sys., Inc.*,

917 F.2d 544 (Fed. Cir. 1990) ..................................................17

*Mayeaux v. La. Health Serv. & Indem. Co.*,

376 F.3d 420 (5th Cir. 2004) ..................................................5,6

*MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,

420 F.3d 1369 (Fed. Cir. 2005) ..................................................15

*Monkton Ins. Servs., Ltd. v. Ritter*,

768 F.3d 429 (5th Cir. 2014) ..................................................8

*Naughtys LLC v. Does 1-580*,

No. 4:21-CV-492-O, 2022 WL 818993 (N.D. Tex. Mar. 3, 2022) ..................................................11

*NTP, Inc. v. Research In Motion, Ltd.*,

418 F.3d 1282 (Fed. Cir. 2005) ..................................................17,19

*Nuance Commc'ns, Inc. v. Abbyy Software House*,

626 F.3d 1222 (Fed. Cir. 2010) ..................................................8

*Patterson v. Aker Sols. Inc.*,

826 F.3d 231 (5th Cir. 2016) ..................................................7

*Sangha v. Navig8 Ship Management Private Ltd.*,

882 F.3d 96 (5th Cir. 2018) ..................................................8

*Schiller v. Physicians Res. Grp., Inc.*,

342 F.3d 563 (5th Cir. 2003) ..................................................5

*Seiferth v. Helicopteros Atuneros, Inc.*,

472 F.3d 266 (5th Cir. 2006) ..................................................8

*S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*,

315 F.3d 535-36 (5th Cir. 2003).................................................................4

*Spring Street Partners-IV, L.P. v. Lam*,

730 F.3d 427 (5th Cir. 2013)..................................................................20

*Stripling v. Jordan Prod. Co*.,

234 F.3d (5th Cir. 2000)..................................................................7,13

*Stuart v. Spademan*,

772 F.2d 1185 (5th Cir. 1985) ............................................................8

*TC Heartland LLC v. Kraft Foods*,

581 U.S. 258 (2017)..................................................................12,13

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,

617 F.3d 1296 (Fed. Cir. 2010) ........................................................17,18,19

*Walden v. Fiore*,

571 U.S. 277 (2014)..................................................................8,10,11

*Wechsler v. Macke Int'l Trade, Inc.*,

486 F.3d 1286 (Fed. Cir. 2007) ........................................................17

*Whitaker v. City of Houston*,

963 F.2d 831 (5th Cir. 1992)..................................................................3,4,5,6

*Wimm v. Jack Eckerd Corp.*,

3 F.3d 137 (5th Cir. 1993)..................................................................5

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,

609 F.3d 1308 (Fed. Cir. 2010) ........................................................17

*Yeti Coolers, LLC v. Love Deals Inc*.,

No. 1:23-CV-79-RP, 2023 WL 4754479 (W.D. Tex. July 24, 2023) ...........................................11

**RULES**

Fed. R. Civ. P. 8..................................................................14,20

Fed. R. Civ. P. 9(b) ..................................................................................................19

Fed. R. Civ. P. 12(b)(2) .............................................................................................7

Fed. R. Civ. P. 12(b)(3) .............................................................................................7

Fed. R. Civ. P. 12(b)(6) ..........................................................................................7,13

Fed. R. Civ. P. 15(a)(2) ..............................................................................................2

Fed. R. Civ. P. 42(b) ...................................................................................................7

Fed. R. Civ. P. 69 .....................................................................................................20

**STATUES**

Texas Uniform Fraudulent Transfer Act (TUFTA) ....................................................20

Plaintiffs[1], by and through their attorneys, respectfully submit this Opposition to Defendant Xebec, Inc's ("Defendant") motion to for leave to file second amended answer, counterclaims and third-party complaint ("Motion"). The Motion was filed by Defendant on August 13, 2025, nearly two years after this case was first commenced against it in another district. Defendant's Motion should be denied as least for the following reasons: (1) Defendant unduly delayed in seeking to amend its pleadings and to join new parties, warranting a denial of the motion; (2) Plaintiffs would be prejudice by the Defendant's amendment adding multiple third-party defendants; (3) Defendant's amendment is futile because it failed to establish the existence of personal jurisdiction over the new, proposed parties in its proposed third-party complaint, and, likewise, has failed to state any plausible claims against those proposed parties. Therefore, Plaintiffs respectfully request the Court to deny Defendant's Motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

On October 15, 2023, Plaintiffs filed this action against Defendant for declaratory judgment of non-infringement of U.S. Patent No. 9,395,757 (the "'757 Patent"). On November 5, 2023, Plaintiffs amended their Complaint. Dkt. 9. On January 22, 2024, Defendant Xebec Inc. ("Defendant") filed its Counterclaims against Plaintiffs alleging infringement of the '757 Patent and of U.S. Patent No. 10,809,762 ("the '762 Patent," and collectively with the '757 Patent, hereinafter the "Asserted Patents"). Dkt. 19.

On February 12, 2024, the Court adopted the parties' proposed case management plan and set a firm deadline for the parties to amend their pleadings, on September 3, 2025. Dkt. 28. On

---

[1] "Plaintiffs" includes Shenzhen Donghongze Trading Co., Ltd., Shenzhenshipenglingzhichuangkeji-Youxiangongsi, Shen Zhen Shi Jia Cai Li Ke Ji You Xian Gong Si, Shenzhenshiweidongzhixinkejiyouxiangongsi, Shenzhenshilaibokeji-Youxiangongsi, Shen Zhen Shi Tai Sen Ao Ke Ji You Xian Gong Si, Shenzhenshimaohongshengkejiyouxiangongsi, Dongguanshiguangli-Yingdianzikejiyouxiangongsi, Zhaotongqianhengshangmaoyou-Xiangongsi; Triple A International Trading Inc; Rongbang Enterprise USA INC; and R&T BROTHERS LLC (collectively referred to herein as "Plaintiffs").

August 20, 2024, upon discovery Defendant's inequitable conduct as a basis for release concerning Defendant's disclosure of the wrong prior art to the USPTO as part of the application process for the '762 Patent, Plaintiffs filed their Second Amended Complaint ("SAC") adding a claim of unenforceability concerning the '762 Patent. Dkt. 55. Defendant submitted its Amended Answer and Counterclaims on September 3, 2024. Dkt. 56.

On February 25, 2025, the cut-off date for the fact discovery, Defendant filed a motion for leave to file an amended answer, counterclaims and original third party complaint. Dkt. 81. On the same day, the Court entered an Order finding that "Although Defendant has answered, and does not challenge personal jurisdiction, venue must nonetheless be proper here, and it appears that venue has never been proper here." Dkt. 82. On April 28, 2025, Defendant filed a Motion to Transfer the Case to Western District of Texas (Dkt. 86), which motion was granted on May 23, 2025. Dkt. 91. The Motion was filed on August 13, 2025, seeking to assert a panoply of new claims, defenses and third-party claims, and to join multiple new parties.

## II.    LEGAL STANDARDS.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[L]eave to amend 'shall be freely given when justice so requires.' "). Whether a motion to amend should be granted is within the discretion of the district court. *Id.* When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc ...." *Overseas Inns S.A. P.A. v. U.S.*, 911 F.2d 1146, 1150–51 (5th Cir. 1990).

Although Rule 15(a) does not impose a time limit "for permissive amendment, 'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir.1992) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir.1981)). In such a situation, the plaintiff bears the burden of showing the delay to be "'due to oversight, inadvertence, or excusable neglect.'" *Id*.

### III.    ARGUMENT

#### A.  Defendant's Motion Should Be Denied for Undue Delay.

Defendant concedes the extreme delay in making the Motion, but attempts to argue that this admitted delay was caused by Plaintiffs. *See* Dkt. 121, p. 20. Defendant argues that this extreme delay was due to "conflict between the discovery responses received in this case and those documents uncovered in the LI LAWSUIT." *Id*. Defendant's argument is totally meritless.

#### 1.  Defendant Should Not be Allowed to Add Shenzhen Baijiayoupu Technology Co. Ltd. As a Third-Party Defendant.

Defendant seeks to add two distinct sets of third-party defendants: (i) those tied to the Li Lawsuit in California, and (ii) Shenzhen Baijiayoupu Technology Co., Ltd. ("Baijiayoupu"). *See* Dkt. 121. Yet Defendant's briefing hones in almost entirely on the Li Lawsuit and related discovery, while saying nothing that would justify the late joinder of Baijiayoupu. That silence is telling. It identifies no newly discovered facts that could ever justify any such delay, with respect to Baijiayoupu. Instead, Defendant attempts to conflate unrelated California discovery with a separate Chinese contract manufacturer, hoping to smuggle Baijiayoupu into the case on the coattails of the disputes identified in the Li Lawsuit.

The record is unmistakable: Defendant has long known about Baijiayoupu, as that entity was identified by Plaintiffs as the manufacturer of the accused products in their August 29, 2024 verified responses to Defendant's First Interrogatories. *See* Decl. of Wei Wang ("Wang Decl."), ¶2.

More importantly, months earlier—in *Shenzhen Laibo Technology Co., Ltd. et al. v. Dovetail Technology Ltd.*, No. 6:2022-cv-00001 (W.D. Tex.)—the Plaintiffs produced Baijiayoupu's information in response to Xebec's interrogatories on February 29, 2024. *See* Wang Decl., ¶3. Defendant was also aware of the Ofiyaa website r around the Fourth Quarter of 2020. *See Id.*, ¶4.

Accordingly, Defendant has been aware of Baijiayoupu's role as Plaintiffs' supplier since at least February 29, 2024. Yet it waited nearly a year to seek leave to add Baijiayoupu (moving on February 25, 2025). Defendant offers no Baijiayoupu-specific explanation, no newly discovered facts, and no cogent explanation for this extraordinary delay—only an effort to piggyback unrelated *Li*-case discovery. This is the very definition of undue delay and lack of diligence under *Whitaker* and *Overseas Inns*. The Court should deny leave to join Baijiayoupu.

**2.    Defendant Should Not be Allowed to Add the Other Identified Parties.**

Defendant blames its delay in seeking leave here on an "extreme conflict between the discovery responses." That rhetoric has no factual support. Defendant sent one deficiency letter on October 25, 2024; the parties then met and conferred in good faith. *See* Wang Decl., ¶5. Plaintiffs agreed to supplement certain responses, and Defendant agreed to clarify several of its requests. Plaintiffs served their response to Defendant's Amended First set of discovery requests on November 26, 2024. *Id.* After that, Defendant identified no further deficiencies and never moved to compel. *Id.* On these facts, Plaintiffs were entitled to conclude the issue was resolved. A litigant that declines to pursue a motion to compel may not later invoke vague "conflicts" to justify a belated amendment. *See S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 535-36 (5th Cir. 2003) (recognizing that a party moving to amend must demonstrate diligence); *Whitaker*, 963 F.2d at 836 (undue delay defeats leave).

Nor does the purported timeline surrounding the Li Lawsuit salvage Defendant's delay. That California case commenced in August 2024. Defendant claims that it first learned of this

lawsuit in January 2025. Even crediting that claim, Defendant then sat for months—first waiting until February 25, 2025 to preview amendments, and again waiting months after transfer before refiling this Motion in August 2025—all while never identifying any Baijiayoupu-specific "new" facts. Finally, Defendant's reliance on an October 2024 substitution of counsel is equally meritless. A change in lawyers does not constitute diligence. And here, Defendant's own lawyer, Blake D. Stovall, had long been involved—as legal counsel to Defendant, participating in the prosecution of the Asserted Patents and conducting settlement discussions in this case, months before the substitution. *See* Wang Decl., ¶6.

In short, the delay is self-inflicted and strategic, not the product of unavoidable discovery conflict or genuine diligence. Under Fifth Circuit law, this kind of sandbagging is "undue delay." *Whitaker*, 963 F.2d at 836; *Overseas Inns*, 911 F.2d at 1150–51. The delay is neither "oversight" nor "excusable neglect"—it is a conscious choice, and should lead to a denial of the Motion.

### B. Defendant's Motion Should Be Denied Because Plaintiffs would be prejudiced by the amendment.

Leave should also be denied because the amendment would fundamentally alter the case and force a do-over of discovery, which is classic undue prejudice. See *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427–28 (5th Cir. 2004) (affirming denial where proposed amendment would "fundamentally alter the nature of the case" and require defendants to relitigate significant issues); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141–46 (5th Cir. 1993) (undue prejudice where amendment injects new theories late and necessitates additional discovery); *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566–67 (5th Cir. 2003) (same).

This is a patent case. The core disputes concern alleged infringement of the Asserted Patents, and invalidity of same. Defendant's proposed pleading goes well beyond that—adding new parties and collateral claims (e.g., asset-transfer/fraud theories) that have little to do with

whether the accused products practice the claims. Allowing that shift would work concrete prejudice. By way of example and not by way of limitation, Defendant's new claim for violation of the Texas Uniform Fraudulent Transfer Act would trigger wide-ranging, non-technical discovery (banking/ownership records, inter-company transfers, accounting evidence, "badges of fraud," third-party and foreign discovery, potential Hague service, and privilege disputes) that are wholly collateral to infringement/validity. Injecting these issues now would extend and re-open discovery, derail claim-construction and expert sequencing, and delay adjudication of liability. Fact discovery in this case originally closed on February 25, 2025. Dkt. 69. Prior to transfer to this Court, which occurred after fact discovery was closed, the parties had conducted substantial discovery and no motion to compel was filed before the cut-off date. The Fifth Circuit recognizes that forcing a party to retool its case and expand discovery near or after key milestones, is the quintessential "undue prejudice". *Mayeaux*, 376 F.3d at 427–28; *Wimm*, 3 F.3d at 141–42.

Further, collateral asset-transfer allegations risk jury confusion and substantially increased cost, with no benefit to resolving the threshold question the parties and the Court must answer first: do Plaintiffs' accused products infringe any valid patent owned by Defendant?

Even taking Defendant's premise at face value, the proper course is not to graft these collateral issues onto the operative pleadings now. If Defendant ultimately prevails on liability and obtains a money judgment, it can pursue any post-judgment enforcement remedies at that time. *See* Fed. R. Civ. P. 69; *cf. Mayeaux*, 376 F.3d at 427–28 (district courts may deny amendments that shift the case's focus and require substantial new discovery).

Accordingly, the Court should deny leave for undue prejudice. At minimum, if any portion is allowed, the Court should sequence or sever, and stay, the collateral, non-patent claims under

Rule 42(b) "for convenience, to avoid prejudice, or to expedite and economize," and proceed first on infringement and validity.

### C.  Defendant's Motion Should Be Denied for Futility of Amendment.

Leave to amend is properly denied where the proposed pleading would not survive a motion under Rules 12(b)(2), 12(b)(3), or 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). That is the case here.

### 1.  Defendant Cannot Establish Personal Jurisdiction Over the Proposed Third-Party Defendants.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc*., 826 F.3d 231, 233 (5th Cir. 2016). When a court assesses a non-resident defendant's challenge to personal jurisdiction without holding an evidentiary hearing, the plaintiff bears the burden of presenting "sufficient facts" for a prima facie case of personal jurisdiction. *Celgard, LLC v. SK Innovation Co., Ltd*., 792 F.3d 1373, 1378 (Fed. Cir. 2015). Establishing jurisdiction in a federal question case is a two-step inquiry (at least when the implicated federal statute does not provide for service of process).

First, a court asks whether a defendant is subject to the jurisdiction of a state court of general jurisdiction under state law. This requires measuring the reach of the long-arm statute of the state in which the federal court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746 (2014). Second, the court asks if the exercise of personal jurisdiction would exceed the limitations of due process. *Id*. Since the Texas long-arm statute extends to the limits of due process, *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002), the Court need only focus on the due process aspects of the personal jurisdiction question, *see Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

Here, Defendant's proposed Third Party Complaint ("TPC") fails to even properly allege such general jurisdiction. "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

### a. The Proposed TPC Fails to Allege Specific Jurisdiction over Tom Li and Cuiwen Jiang.

Defendant's jurisdictional paragraph lumps all Third-Party Defendants together and recites that they "transacted business," "derived substantial revenue," and have "minimum contacts" with Texas. *See* Dkt. 121-25, p. 20. That is classic group pleading and a formulaic recitation that does not satisfy its *prima facie* burden. Each defendant's contacts must be assessed individually, and there must be defendant-specific facts showing purposeful availment and that the claims arise out of or relate to those contacts. *Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006).

Mere ownership of a company that sells nationwide—or receipt of profits or dividends—does not constitute purposeful availment by the owner personally. Acts taken solely in a corporate capacity do not create personal jurisdiction over the individual. *Stuart v. Spademan*, 772 F.2d 1185, 1197 & n.11 (5th Cir. 1985); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433–35 (5th Cir. 2014); *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d 96, 103–05 (5th Cir. 2018).

Here, Defendant merely alleges that the proposed third-party defendants, Tom Li and Cuiwen Jiang, acted to form some of the Plaintiffs and third-party defendant entities. However, Defendant pleads no facts that any individual personally "aimed" conduct at this forum. The generic allegation that unnamed "Third-Party Defendants" "derived substantial revenue" from

products "offered for sale and/or sold in this District" is legally insufficient. On this record, exercising specific jurisdiction over proposed defendants Tom Li and Cuiwen Jiang would violate due process. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012).

### b. The Proposed Pleading Fails to Allege Any Facts to Suggest Specific Jurisdiction over the Proposed Third-Party Defendants.

Patent infringement occurs by the production, use, sale, or offer for sale of a patented product. 35 U.S.C. § 271. "Thus, the Court has personal jurisdiction over [defendant] if [defendant] sold or offered to sell the allegedly infringing services in Texas." *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006). Here, Defendant failed to allege any specific facts in support of the assertion of specific jurisdiction over proposed defendants FUCANG, FUBANG GROUP, SHENZHEN FUCANG and Baijiayoupu.

First, the proposed pleading is devoid of allegations suggesting that this Court would ever have specific jurisdiction over FUCANG. Defendant alleged that "FUCANG sells one or more infringing auxiliary screen mounting systems on Amazon under the seller name 'PPL Technology Supply' and seller ID 'A1XIN809VFHJIC.'" *See* DKt. 121-25, p, 30. However, this statement is conclusory and false. Based on the review of FUCANG's Amazon store, it shows that FUCANG does not sell any of the Accused Products identified by the Defendant in the proposed Amended Counterclaims (the Model P1, P2, P2 Pro, S1, and S2). *See* Wang Decl., ¶7. If Defendant believes the portable monitor sold by FUCANG also infringes its patents, it should bring a separate lawsuit against FUCANG because they are entirely different products from the Accused Products. *In re EMC Corp.*, 677 F.3d 1351, 1359–60 (Fed. Cir. 2012) (rejected joinder of unrelated sellers of different products—even if accused under the same patent). Thus, since Defendant failed to allege FUCANG has sold or offered to sell any Accused Product in this District, the Court should deny the amendment as to FUCANG.

Second, the proposed TPC fails to include sufficient allegations to support the assertion of specific jurisdiction over FUBANG GROUP and SHENZHEN FUCANG. Defendant alleges that FUBANG GROUP is "an intermediary to purchase and import infringing auxiliary screen mounting systems." *See* DKt. 121-25, p, 31. Defendant also alleges that SHENZHEN FUCANG procures and exports one or more infringing auxiliary screen mounting systems to United States. *Id.*, at pp. 31-32. However, Defendant failed to allege that FUBANG GROUP and SHENZHEN FUCANG have ever purposefully directed activities at residents of this forum. Even taking Defendant's allegations as true, the proposed pleading is devoid of allegations to even suggest that FUBANG GROUP and SHENZHEN FUCANG had minimum contacts with this forum. Allegations that a foreign supplier exports to the United States or that an intermediary imports into the United States invoke, at most, the stream of commerce—which is insufficient absent conduct targeted at this forum (e.g., Texas-specific distribution agreements, marketing, sales into Texas, after-sale service here, or control of channels directed to Texas). *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885–87 (2011). Defendant pleads none of those facts: no Texas contracts, no shipments to Texas, no Texas customers, no Texas place of business, and no Texas-aimed sales or support attributable to FUBANG GROUP or SHENZHEN FUCANG. Mere participation in a global supply chain destined somewhere in the U.S. does not establish minimum contacts with Texas, and thus cannot support specific jurisdiction here. *See Walden*, 571 U.S. at 284–86.

Third, the proposed pleading is likewise futile insofar as it fails to include sufficient allegations to show that the Court has specific jurisdiction over Baijiayoupu. It is not disputed that Baijiayoupu is the manufacturer of the Accused Products sold by Plaintiffs. However, similar to the FUBANG GROUP and SHENZHEN FUCANG, it is insufficient to establish personal jurisdiction over Baijiayoupu simply because it is a Chinese manufacturer. Defendant also alleges

that Baijiayoupu operates the website located at www.ofiyaa.net. *See* Dkt. 121-25, p. 25. However, it is not true. This website claims a company at an address that does not match Shenzhen Baijiayoupu's registered address. *See* Wang Decl., ¶8. In fact, www.ofiyaa.net is not registered or operated by Baijiayoupu. *Id.*, ¶9. In other words, the pleading misattributes the website to Baijiayoupu. Further, even if one were to accept the demonstrably false allegation that the www.ofiyaa.net website is registered and operated by Baijiayoupu, the proposed pleading fails to even allege with specific facts sufficient allegations to establish personal jurisdiction, as that pleading does not even plausibly allege that Baijiayoupu has ever sold or shipped any Accused Products into this District. *See, e.g., Yeti Coolers, LLC v. Love Deals Inc.*, No. 1:23-CV-79-RP, 2023 WL 4754479, at *5 (W.D. Tex. July 24, 2023); *CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, No. 3:15-CV-2854-B, 2016 WL 3418974, at *2 (N.D. Tex. June 22, 2016) (refusing to find specific jurisdiction over Defendant based on Defendant's website because Plaintiff "has not alleged that a single disinterested Texas resident purchased an infringing product through [Defendant's] online store or even used its website aside from [Plaintiff's] counsel, whose purchase does not count towards [Defendant's] minimum contacts"); *Naughtys LLC v. Does 1-580*, No. 4:21-CV-492-O, 2022 WL 818993, at *8 (N.D. Tex. Mar. 3, 2022). Allegations that a foreign factory makes goods overseas that later enter U.S. commerce do not establish purposeful availment of Texas. The Supreme Court has made clear that the stream of commerce—without conduct targeted at the forum state—is not enough. *McIntyre*, 564 U.S. 873, at 885–87; see also *Walden*, 571 U.S. at 284–86.

Accordingly, the amendment as to Third-Party Defendants, FUCANG, FUBANG GROUP, SHENZHEN FUCANG and Baijiayoupu is futile for lack of specific personal jurisdiction.

**2. The Venue is not Proper.**

Patent venue is governed exclusively by 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods*, 581 U.S. 258, 262–66 (2017). The plaintiff bears the burden to show venue is proper. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). For any domestic defendant, venue lies only (1) where the defendant resides (for a natural person, domicile; for a corporation, state of incorporation), or (2) where the defendant committed acts of infringement and has a regular and established place of business—which requires a physical place in the district that is regular and established and is the defendant's place (under the defendant's control). *see also In re Google LLC*, 949 F.3d 1338, 1343–48 (Fed. Cir. 2020).

### a. The venue is not proper for Baijiayoupu.

Defendant asserts that Baijiayoupu "may be sued in any judicial district … pursuant to § 1400(b)." That is legally wrong. Section 1400(b) does not authorize suit "in any district." The "alien-venue rule" derives from 28 U.S.C. § 1391(c)(3), and the Federal Circuit has confirmed that rule remains intact after *TC Heartland*. *In re HTC Corp.*, 889 F.3d 1349, 1355–57 (Fed. Cir. 2018). If Defendant intends to invoke the alien-venue rule, it cited the wrong statute, and the statute that it did cite for purposes of venue does not allow for venue in this district.

In any event, venue is never proper when you cannot show personal jurisdiction in the first place.  For all of the reasons expressed above, Defendant has not plausibly alleged that Baijiayoupu committed acts of infringement in this District. As shown above, Defendant failed to show Baijiayoupu owns, controls, or operates the www.ofiyaa.net website.  Defendant further failed to show Baijiayoupu has ever sold or shipped any Accused Products into this forum. On these allegations, venue is not properly laid against Baijiayoupu—and, regardless, the amendment remains futile because personal jurisdiction is lacking.

### b. The venue is also not proper for the other (proposed) Third-Party Defendants.

Defendant's venue paragraph for these domestic third-party defendants says only that each "is independently subject to the Court's personal jurisdiction" and is a "necessary party." That is not the test for venue in a patent case. *TC Heartland* makes clear that § 1400(b) is exclusive, and general venue notions or "necessary party/common enterprise" theories cannot substitute for § 1400(b)'s requirements. 581 U.S. at 262–66.

As pled, none of these defendants reside in this District, and Defendant alleges no facts satisfying the three requirements expressed in *In re Cray, Inc.*, 871 F.3d 1355 (Fed. Cir. 2017). Nor does Defendant allege concrete acts of infringement in this District tied to any specific, proposed new third-party defendant, instead relying entirely on group pleading and purported online information.  That is legally insufficient under § 1400(b). *See In re Google*, 949 F.3d at 1343–48 (requiring regular, physical presence of the defendant or its agent); *Cray*, 871 F.3d at 1360–64; *ZTE*, 890 F.3d at 1013 (burden on the proponent of venue).

### 3. Defendant's Proposed Pleading Fails to Even State an Infringment Claim Against the Proposed Third-Party Defendants.

Futility also exists when the amended complaint "fail[s] to state a claim upon which relief could be granted." *Stripling* 234 F.3d at 873. In determining futility, the Court applies "the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)." *Id*.  As such, the question "is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id*. Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to

relief that is plausible on its face." *Id*. at 570. The court must initially identify allegations in the complaint that are no more than legal conclusions or "[t]hreadbare recitals of a cause of action's elements," then assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### a.  The Proposed Pleading Fails to Give Fair Notice of any Valid Claim.

Rule 8 requires "a short and plain statement" that plausibly shows entitlement to relief and gives each defendant fair notice of "what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555–57; *Iqbal*, 556 U.S. at 678–79. Defendant's proposed amended counterclaims does neither. It impermissibly lumps all "Plaintiffs/Counter-Defendants and Third-Party Defendants" together and conflates three distinct theories—direct (§ 271(a)), contributory (§ 271(c)), and induced (§ 271(b)) infringement—without identifying who allegedly did what, when, or how. *See* Dkt. 121-25, pp. 33-37. Further, Defendant only pleads inducement as to Baijiayoupu in its first Count, not as to anyone else. *Id*, p. 34. Yet in the Prayer for Relief, Xebec asks the Court to enter judgment that each Plaintiff/Counter-Defendant and each Third-Party Defendant has directly and/or contributorily infringed and has induced infringement of its patents—again, without saying which party supposedly falls under which theory. These contradictions deprive every Third-Party Defendant of fair notice of the theory asserted against them.

Thus, Defendant should not be allowed to amend the infringement claims against the Third-Party Defendants for failure to give fair notice pursuant to the Rule 8.

### b.  Defendant's Proposed Pleading Fails to State an Induced Infringement Claim.

Section 271(b) of the Patent Act provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To succeed on such a claim, the patentee must show that the accused infringer (1) knowingly induced direct infringement and (2)

14

possessed "specific intent" to induce that infringement. *See MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005).

To state a claim for relief for induced patent infringement, "a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376–77 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) (recognizing that while a plaintiff is not required to plead facts establishing each element of a direct patent infringement claim, the heightened pleading standard of *Twombly* and *Iqbal* applies to indirect or induced infringement claims.)).

Here, Defendant pleads no defendant-specific facts showing that any Plaintiff or proposed new Third-Party Defendant knowingly induced a direct infringer or acted with the requisite specific intent to cause infringement. Defendant's lone inducement allegation aimed at Baijiayoupu asserts that "through its manufacture of one or more of the Accused Products, licensing of the "OFIYAA" trademark in the United States, and through its agreements with third parties, including the Plaintiffs/Counter-Defendants and other Third-Party Defendants, has induced said parties to infringe upon the infringing auxiliary screen mounting systems covered under the '762 Patent." *See* Dkt. 121-25, p. 34. That boilerplate language falls far short of case precedents, and does nothing to properly identify when or how Baijiayoupu acquired pre-suit knowledge of the asserted patents, nor does the proposed pleading allege any affirmative acts of encouragement evidencing specific intent. Absent plausible allegations of knowledge and specific intent, the § 271(b) theory fails as a matter of law. The requested amendment is therefore futile and should be denied.

### c. The Proposed Pleading Fails to State a Claim of Contributory Infringement Against Plaintiffs and Proposed Third-Party Defendants.

Contributory infringement of a patented device involves the sale, offer to sell, or importing of a component of the device, which is "not itself technically covered by the claims of a product or process patent." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990). Unlike induced infringement, contributory infringement requires "only proof of a defendant's knowledge, not intent, that his activity cause[s] infringement." *Id.* at 1469. But "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 135 S.Ct. 1920 (2015).

Here, Defendant never identifies what component (as distinct from a finished product) any Plaintiff or proposed Third-Party Defendant supposedly supplied; fails to even allege if they were especially made/adapted for infringement; and fails to plead the statutory requirement that such product(s) lack substantial non-infringing uses. That omission alone defeats a § 271(c) theory under *Twombly/Iqbal*.

Further, similar to the induced infringement claim, Defendant also pleads no facts that any accused contributor knew of the asserted patent before suit and knew the identified (nonexistent) component was especially made/adapted for infringement. That failure is independently fatal. *Commil*, 575 U.S. at 639.

Because the pleading omits both the substantive § 271(c) elements and the required knowledge, the contributory-infringement claims are implausible, and Defendant should not be allowed to amend its counterclaims.

### d. Defendant's Proposed Pleading Fails to State a Claim for Direct Infringement Against the Proposed Third-Party Defendants.

Direct infringement under § 271(a) requires factual allegations that each accused defendant, in its own capacity, "made, used, offered to sell, sold, or imported" the accused invention within the United States. 35 U.S.C. § 271(a); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1316–17 (Fed. Cir. 2005) (territorial requirement); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1308–10 (Fed. Cir. 2010) (what constitutes a U.S. "offer to sell"). Pleadings that lump parties together or rely on corporate status do not suffice. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (must plead facts making infringement plausible as to each defendant).

First, Defendant's proposed pleading is futile because it failed to state any plausible claim for direct infringement against proposed defendants Tom Li and Cuiwen Jiang. Defendant pleads no facts that either individual personally made, used, sold, offered to sell, or imported any accused product. Corporate ownership/office status does not create personal § 271(a) liability. *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1313–19 (Fed. Cir. 2010); *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295–97 (Fed. Cir. 2007). Absent well-pleaded personal acts of infringement—or well-pleaded facts justifying piercing the corporate veil—the claim fails as a matter of law. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553–55 (Fed. Cir. 1990); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331 (Fed. Cir. 1999). Defendant pleads neither.

Second, Defendant's proposed pleading fails to state a proper claim of direct infringement against proposed third-party defendant FUCANG. Defendant alleged that FUCANG sells one or more infringing auxiliary screen mounting systems on Amazon under the seller name PPL. *See* DKt. 121-25, p, 30. However, based on the review of FUCANG's Amazon store, it shows that FUCANG does not sell any of Accused Products identified by the Defendant in the proposed

Amended Counterclaims (the Model P1, P2, P2 Pro, S1, and S2). *See* Wang Decl., ¶7. Defendant pleads no facts tying FUCANG to any specific listing, ASIN/SKU, sale, shipment, or offer for these products. A bare reference to a storefront, without defendant-specific facts showing a § 271(a) act, is insufficient to state direct infringement.

Second, the proposed amended pleading fails to include any viable claim of direct infringement against FUBANG GROUP. Defendant cites documents saying FUBANG GROUP "receives goods from China," then asserts—without facts—that FUBANG "imports" accused products into the United States. "Receiving goods" (as consignee/forwarder) is not itself a § 271(a) act. *See* Dkt. 121, p. 12. To plead importation or sale, Defendant must allege defendant-specific facts that FUBANG itself brought the goods into the United States or consummated a U.S. sale/offer of an accused product. None are pled. *See* § 271(a); *Transocean*, 617 F.3d at 1308–10 (offer-to-sell analysis turns on where the offer occurs and is directed).

Third, Defendant's proposed pleading fails to articulate any viable claim for direct infringement against SHENZHEN FUCANG. Defendant alleges only that it exports accused products. "Export" from abroad is not an enumerated § 271(a) act; the statute reaches import into the United States, not foreign-to-foreign activity or mere outbound shipment by a non-U.S. party. § 271(a). Nor does a foreign purchase or sale abroad state a U.S. direct-infringement claim. *NTP*, 418 F.3d at 1316–17 (acts must occur within the United States). Defendant pleads no U.S. importation, sale/offer, or use by this proposed new party.

Fourth, Defendant's proposed pleading fails to articulate any viable claim of direct infringement against Baijiayoupu. Defendant fails to allege that Baijiayoupu committed any § 271(a) act in the United States. Instead, Defendant's ill-fated theory hinges on attributing the marketing site www.ofiyaa.net to Baijiayoupu, but the site's address do not match Baijiayoupu's

corporate details, and Defendant fails to even plead sufficient facts to conclude that Baijiayoupu

owns, operates, controls, or uses that site to make a U.S. offer to sell. Without defendant-specific

facts showing Baijiayoupu made, used, offered to sell, sold, or imported an accused product in the

United States, the direct-infringement claim fails. § 271(a); *Transocean*, 617 F.3d at 1308–10; *NTP*,

418 F.3d at 1316–17.

### 4.   Defendant's Proposed Pleading Fails to Include a Viable Claim for a Violation of the Texas Uniform Fraudulent Transfer Act (TUFTA).

To state a claim for fraudulent transfer under TUFTA, a creditor whose claim arose before

the allegedly fraudulent transfer at issue must allege that the transfer was made "without receiving

a reasonably equivalent value ... and the debtor was insolvent at that time." Tex. Bus. & Com.

Code § 24.006(a). Allegations of fraud or mistake require a heightened pleading standard under

Rule 9(b), which requires the pleader to "state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b). The Fifth Circuit strictly interprets Rule 9(b), requiring the

pleader to "specify the statements contended to be fraudulent, identify the speaker, state when and

where the statements were made, and explain why the statements were fraudulent*." Flaherty &

Crumrine Preferred Income Fund, Inc. v. TXU Corp*., 565 F.3d 200, 207 (5th Cir. 2009).

Defendant's proposed amendment of its pleading to assert a new claim under TUFTA should be

denied for at least three independent reasons:

First, this proposed new claim is clearly not viable as it is pled largely "upon information

and belief," without Rule 9(b) particulars. The complaint relies on information-and-belief

assertions about "funneling revenues," "insider transfers," and "moving funds overseas," but

supplies no transaction-level details. See Dkt. 121-25, pp. 32-33. Rule 9(b) forbids this kind of

conclusory pleading. *In re Primera*, 560 B.R. 448, 461 (W.D. Tex. Bankr. 2016).

Second, the proposed pleading is wholly lacking in specific "transfer" facts (transferor, transferee, asset, date, consideration, nexus). TUFTA is transfer-centric: a "transfer" of an "asset" by a "debtor" that defrauds a "creditor." Tex. Bus. & Com. Code §§ 24.002, 24.005. Defendant does not identify who transferred what asset, to whom, when, for what value, or how the alleged transfer hindered, delayed, or defrauded Xebec as a creditor. Courts routinely dismiss TUFTA claims that offer only buzzwords about "insiders/diversion" without these specifics, and thus the proposed pleading is futile as it will only be dismissed if filed. *See Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 436–37 (5th Cir. 2013) (listing badges of fraud and requiring factual support); *Berry v. D&S Residential Holdings, Inc.*, 2012 WL 1901301, at *9* (S.D. Tex. May 24, 2012) (dismissing TUFTA for lack of specifics as to the transfers).

Third, there are no facts showing the alleged transferor(s) failed to receive reasonably equivalent value, and no facts pleading balance-sheet insolvency, cash-flow insolvency, or "unreasonably small capital" at the time of any identified transfer. Threadbare recitals do not satisfy Rule 8, much less Rule 9(b) for any fraud-sounding theory. *Twombly*, 550 U.S. at 555–57; *Iqbal*, 556 U.S. at 678–79.

Fourth, TUFTA is a collateral remedy that would needlessly complicate and delay the merits. TUFTA is designed to protect collection, not to convert a patent case into sprawling asset-transfer litigation, long before there has even been any showing of entitlement to relief on the part of Defendant. If Defendant ever obtains a money judgment, ordinary post-judgment remedies (Rule 69) are available. Injecting TUFTA now—without particularized facts—would be futile and prejudicial.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Court deny Defendant's

Motion to for leave to file second amended answer, counterclaims and third-party complaint.

Respectfully Submitted:


Date: 9/10/2025 _____    /s/ Wei Wang _____

Wei Wang
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
wei.wang@glacier.law
(212) 729-5073
***Attorney for Plaintiffs***

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2025, a copy of the foregoing was served upon all attorneys of record via electronic mail.

Dated: September 10, 2025                    By:  /s/ *Wei Wang*
                                                  Wei Wang